So we will hear argument in No. 20-1833, Chudik v. Iancu. Mr. Waldmeier, please start when you're ready. Good morning, Your Honor, and may it please the Court, Eric Waldmeier for Appellant Stephen Chudik. In denying Dr. Chudik's motion for summary judgment and in granting the PTO's motion for summary judgment, the District Court erred for at least two reasons and should be reversed. First, under the C-delay portion of the Patent Term Adjustment Statute at 35 U.S.C. 154B1Ciii, the pendency of the review at the PTAB begins, like it does in this Court, upon the filing of a Notice of Appeal. The PTO errs in only providing C-delay days upon the filing of a reply brief or upon the expiration of the time to file a reply brief. The District Court erred in finding that the C-delay portion of the statute was ambiguous and erred in finding reasonable the PTO's regulations and decisions on this point. Second, the text of the C-delay portion of the statute provides, providing, quote, a decision in the review reversing an adverse determination of patentability, end quote, is not limited to a decision of the PTAB. Instead, the language encompasses a decision of the examiner to reopen prosecution after a Notice of Appeal is filed. The U.S. PTO errs in its decision and its regulations to exclude an examiner's reopening from being a decision in review under the statute, and the District Court erred. Mr. Welmeyer, this is Judge Toronto. Can I ask a question that has, I guess, been hanging over my thinking about this case? Why is there not B-delay, not C-delay, but why is there not B-delay for the 655 days that are at issue here? What's the obstacle to that? I think of that, obviously, because as you discuss in your brief, the most recent, or in the Federal Register, has the PTO saying, we're going to trim back the availability of C-delay, and the director there repeatedly says, at least in many circumstances, those days now trimmed out of C-delay will be available in B-delay, and I'm actually interested in both parties' views about what the obstacle is to these 655 days being eligible for B-delay. Your Honor, thank you. I believe the issue here about B-delays is that the B-delays exclude time consumed by a continued examination of the application. In this case, prior to the final rejection from which the first notice of appeal was filed to the PTAB, prior to that, there was a request for continued examination, and that is where the B-delays become unavailable. And we think that the government's basic—I'm sorry, go ahead. No, no, I don't think there was a question. Why don't you continue? Oh, I'm sorry. So the B-delays are unavailable for the time period that's at issue here. In this case, we had a final rejection, we had a notice of appeal, then we had four reopenings where the examiner dropped a reference for 102 and 103 and added a new reference, and then dropped two references for 102 and 103 rejections, dropped the 102 rejection entirely, brought up new references for 103, introduced new 112 and 101 rejections that were not previously made. Then at each point, Dr. Chuttick filed a notice of appeal and an appeal brief, and at each time thereafter, there was a reopening, dropping the 112 rejection and then, again, a notice of appeal and then a fourth reopening, dropping the 101 rejection. So in each case, we have an examiner reversing her decision, and that was within the review under the statute because the review is pending when the notice of appeal is filed. The language— Just to be clear, you need to find error on two grounds. One, the ground that the only permitted reverser is the board under this C-delay provision, and also that the review was underway even before, as a regulatory matter, the board's jurisdiction attached by the filing of the reply or the lapse of time for the reply. Those are two separate grounds on which, if you're wrong about either one, the district court's judgment would stand. Is that right? Your Honor, that's correct. We need a decision in the review reversing an adverse determination, and dependency of the review begins at the notice of appeal. So those are the two things, the two places where the district court and the PTO error that we believe clearly the statute provides contrary. So, yes, those two errors need to be corrected. The PTO's position that the C-delays beginning later at the reply brief rather than at the notice of appeal is contrary to the fundamental purpose of the statute, as this court recognized on another provision in Sobernus, where the court said the US PTO's interpretation of and went on to say that it failed to protect the applicant's full patent term. As I mentioned earlier, the back and forth, the four reopenings in this case, spanned a period of about three and a half years, and the amount of time that we think should be available from the notices of appeals to the reopenings in each case is 753 days. And that is a substantial amount of time, and the process of going back and forth many times, that's not something that would be acceptable in this court. And if the applicants are required to be subjected to essentially an almost unending changing of position when the applicant wants to undertake an appeal, at least they should be compensated as Congress intended by the restoration of days that were consumed in that time, when all of that time was not caused by Dr. Chudok. It was entirely caused by the patent office. So... I'll turn. And just to be clear about this, and all of the time that's in dispute, would you think actually be excluded from B delay because it was, quote, consumed by continued examination under 132B? Your Honor, that's my understanding at this moment, that the time there is... That's why the office hasn't awarded it. But even, you know, the issue about, you know, whether it's here or there, the statute, you know, contemplates that there might be some overlap between essentially A, B, or C delays. If you look at B2, it talks about, well, if there's any overlaps, at least, you know, the period shall not exceed the actual numbers of delays of the issue in terms of the patent. So Congress sought to, you know, address the issue of, you know, overlaps, if there are any. And that it's, you know, and because Congress has already addressed the issue of overlap, we should be focused on the language of section, the C delays of the statute, you know, even if delays, sections might be, you know, delays, other delays might be added because Congress, you know, provided a way to resolve that. In the district court, the district court says that, quote, the actual process of... That the review in the statute could refer to the, quote, actual process of substantive review rather than the period initiated procedurally. And the government at its brief on page 31 says, refers to this as, quote, the appoint when the PTAP actually starts evaluating the lower decision. But actually, the PTO doesn't limit C delays to only the time judges spend reviewing briefs or considering their decisions. Instead, you know, we've all picked a time when the briefing is complete, but the delays under the patent term adjustment statute are for delays. They're for the delays, whether we're waiting for a decision, whether the PTAP is actually working on it, or for other reasons, you know, that follow the beginning of the review period that starts on the notice of appeal. And my time has gotten to the end, so I will reserve the balance for rebuttal. Thank you. Thank you. We'll hear from Ms. Yang. Thank you. Good morning, and may it please the court. This is Assistant United States Attorney Catherine Yang on behalf of the Director of the Patent Trademark Office. Mr. Trudyk seeks C delay under 35 U.S.C. 154 C-3 for the time spent in his appeals to the PTAP. However, and crucially, Mr. Trudyk undisputedly never received a decision by the PTAP that reversed the examiner's adverse determination. That places him entirely outside the textually narrow scope of the C delay provision, and the court should affirm... Ms. Yang, Ms. Yang, this is Judge Taranto. So I want to actually turn back to this B question because I guess that's where my puzzlement lies. I do understand that in this case, Mr. Trudyk did not ask for B delay. If you can put that out of your mind for a minute, can you help me understand why B delay would not be available here? And then there's a natural follow-up to that, which is there seems to be an extensive period of delay caused by the PTO that is unaccounted for by the combination of the C delay restriction and the restriction on B, if indeed there is a restriction on B. Certainly, Your Honor. The answer to your question of why there's no B delay in this particular case is because by statute, the time following a request for continued examination is excluded from B delay, and that's also what this court has held in the Novartis case. Had Mr. Trudyk immediately appealed his final rejection in 2010 to the PTAP, then he would have been compensated for any examiner reopening in the form of B delay. And as Your Honor noted, that's exactly the reasoning that was given in the PTO's rulemaking, that an examiner's reopening isn't appellate reviewed by the PTAP, but that it can be compensated with additional B delay. However, in this case, Mr. Trudyk made the choice to file an RCE instead, and again, by statute and this court's precedent, that mandates that whatever time is spent in continued examination is then subtracted from B delay. Can you help me understand just why at the level of... Why does it make sense to combine the restriction on C, the dual restriction that you've asserted here and that the district court found here, with an exclusion for continued examination? I just... I'm not familiar enough with the details of continued examinations to understand why that would make sense since it leaves, in this case, almost two years of unaccounted for time. Certainly. The answer, I think, is in the statute itself, specifically that in the B delay provision, one of the other exclusions is that it also excludes time consumed by appellate review by the PTAP or the federal court, but for our purposes here today, by the PTAP. And so there is that identical language in the exclusion in the B delay provision as well as the C delay provision such that even though under the C delay provision, an applicant would not be compensated for an examiner's reopening, that same time would be compensated in the B delay, in the form of B delay, and that only the time spent after jurisdiction passed to the board would that time not be counted for purposes of B delay. So I think the first answer to your honor's question lies directly in the statute. The second response to your honor's question and going to the period that you mentioned is uncompensated, is that yes, the PTA statute is designed to compensate delays by the PTO. However, it only compensates applicants for certain types of enumerated PTO delays that and those enumerated types are each reflected in each of the A, B, and C delay provisions. Let me just try to ask, I guess, this version of the question. What exactly did the request for continued examination do? You indicated that I think that B delay would have been available had the appeal been taken from the final office action and no request for continued examination been filed. So what did the request for continued examination ask the examiner to do, authorize the examiner to do, that somehow changes the concrete situation that the applicant faced? I confess I'm not familiar with the intricacies of the content of the RCE and how that changed concretely the case for the application. However, it is true that Mr. Chudik received a final rejection in 2010, at which point immediately he could have appealed to the PTAB and any examiner reopening after that period would have been compensated by additional B delay. The request for continued examination simply just allowed the examination to continue rather than stopping Mr. Chudik in his tracks at that particular point. But again, I would also sort of loop back to the earlier answer that I gave Your Honor, which is that the back and forth between an applicant and an examiner isn't properly considered PTO delay. And again, the statute only compensates applicants for certain types of enumerated PTO delay. That back and forth between an examiner and an applicant is just a part of the regular process of patent prosecution as this court has held in the Pfizer case. And so these are the reasons why B delay normally would be available to compensate an applicant for any time consumed by an examiner's reopening. It just so happens that under the prosecution choices that Mr. Chudik made in this case and as a result of the statute and this court's precedent interpreting that statute, that additional time cannot compensate him here in the form of B delay. In terms of the plain language and the context of the statute, we've, I think, explained this extensively in our brief, so I won't belabor the point, but the plain language and the context conditions the threshold entitlement to C delay on two interrelated requirements. There has to be one, the existence of a decision in the appellate review by the PTAS, and two, one that reverses an adverse determination. The plain language of the term appellate review means a higher authority's examination of a decision below, which then affirms or reverses. And the statute also tells us at Section 6 that the very role of the PTAB is to review adverse decisions of examiners. And so if there were any doubt about what the meaning of reversing an adverse determination is, that would be resolved by the very statute itself, which tells us that the PTAS is the one that reviews adverse decisions. Taken together, this means that it is not enough that the examiner reopened prosecution to entitle him to C delay in the first place. This is also consistent with what this court has held in the Hyatt case, where the court held that an examiner's reopening of prosecution is completely separate from appellate review by the PTAS, and it's consistent with the statute, because by statutory definition, an examiner is not a member of the PTAS, does not conduct appellate review, and does not reverse itself. Mr. Chudik's only textual argument, which he repeated again here today, is that appellate review means the beginning of the appeal and somehow signifies the tendency of the appeal. But the term appellate review is different and has to be different from the mere taking of an appeal. And we know this because the PTA statute in other sections refers specifically to the taking of an appeal. And so because Congress decided to use distinct language in the C delay provision with the specific phrase appellate review, as opposed to taking an appeal, that distinction has to mean something under regular rules of statutory construction. Rather than addressing the issue of entitlement, Mr. Chudik focuses on this secondary issue of how the PTO calculates C delay, in other words, referring again to the pendency of the review and C delay on the date the jurisdiction passes to the board. To be clear, the court does not need to decide this issue, because he is not entitled to any C delay in the first place. There are other arguments or there are other issues with this argument about calculation that are discussed fully in the red brief, so I won't belabor the point here except to reiterate that the language in the last part of 154C regarding the pendency of the review, as a matter of statutory construction, has to refer to the same appellate review by the PTAB that is in the preceding portion in C3. The PTAB's review does not start upon the moment of a notice of appeal, and so Mr. Chudik's argument, even about how the PTO calculates C delay, is flawed as a textual matter. Moving on, this case can and should be decided in the PTO's favor just based on the plain language alone, but if the court decides that the statute is ambiguous, it still should The regulations at 1.702 and 1.703E are reasonable constructions of the statute and are entitled to considerable deference. Again, starting with entitlement, both regulations require that there be a decision by the PTAB in the applicant's favor, and that is directly keyed off of the statutory language just discussed. The regulations are also the result of extensive notice and comment rulemaking that has repeatedly addressed and rejected the argument here that something other than a favorable decision by the PTAB can entitle an applicant to C delay. That has been the rule for more than 20 years, and it's remained the rule because of extensive comments saying that's a better interpretation, and notably Mr. Chudik doesn't actually challenge the propriety of that rulemaking. Even with respect to the regulations, Mr. Chudik's arguments, again, conflate the secondary issue of how PTO calculates C delay with the threshold issue of whether he's entitled to it at all, and because he undisputedly did not receive any decision by the PTAB under both the statute and the regulations, he's not entitled to any C delay. Contrary to the argument I heard today that the regulations are inconsistent with the statute, again, I reiterate that the purpose of the statute is to compensate applicants for certain types of enumerated PTO delays. It's not just any and all form of PTO delay. It is specific categories as laid out in sections A through C, and that purpose is fully fulfilled by this portion of the regulation that says that C delay starts when jurisdiction passes to the board. That portion of the regulation was also promulgated pursuant to extensive notice and comment rulemaking, and it was adopted for the dual reasons of, one, harmonizing the regulation with the board's procedures, with other parts of the PTA statute, and with, frankly, the realities of the patent review process, and, two, in response to comments that doing so would give applicants the opportunity to receive additional B delay for the time between the notice of appeal and jurisdiction passing to the PTAB. So, again, applicants can still be compensated for this time in the form of B delay in most cases. This is exactly the sort of reasons rulemaking that is supposed to occur that did occur here, and again, notably, Mr. Chudik does not challenge the propriety of the rulemaking. If there are no other questions by the panel, I'll just ask that for these reasons and the reasons in our briefs that the court affirm on the basis of the plain language of the reasonable regulations. Thank you, Ms. Yang. Thank you. We'll hear rebuttal from Mr. Weltzner. Thank you, Your Honor. Dr. Chudik does challenge the regulations. I mean, that's the point, that the regulations are out of line with the clear statute. The issue about whether an examiner's reopening of the prosecution where the examiner reverses herself, which she did in four instances in this case, was a position that the USPTO itself proposed in the Federal Register where they said often that reveals a weakness in the adverse patentability determination from which the appeal was taken. In that Federal Register into 2012, the admission that a reopening could qualify as a decision in the review reversing an adverse determination of patentability, it uses the statutory language and it just basically describes the examiner reversing herself. So the USPTO had completely agreed with Dr. Chudik here. It subsequently erred by not following through with that. But nevertheless, to say that it could only be limited to the decisions when it self-proposed to contrary in the Federal Register, it just can't succeed in that. The proposal was not, I think, adopted. It died after having been proposed, right? That's right. It wasn't adopted. I'm not sure how much force you get from a proposal that was not ultimately promulgated as a regulation. Well, certainly it wasn't adopted, but... You're talking about the problem which was ultimately rejected, presumably, by the agency. And we believe wrongly rejected. So the other issue I'd like to address is that the Council has suggested that the language review in the C-delay portion means something different from the language of appeal taken, which you'll find, I think, in the A-delay section. But there's no significance to that. It's merely the structure of the C-delay language, where it says the term of the patent shall be extended one day for each day of the pendency of the proceeding order or review. To use the word appeal taken in that sequence grammatically, I think, would be difficult. I don't think there's any congressional indication that some shorter period should be provided in one or the other circumstance here. So I don't think this significance can attach to the words appeal taken versus review. The other issue that Council raised is that the examiner cannot reverse herself. And I think that's just not the case, as we can see from the examiner's actions in this case. In other circumstances, for example, a judge could reverse herself without higher authority, such as through a motion to reconsider or other means. So as what the examiner did here to reverse herself four times clearly fits within the language of the statute. And there's no qualification on who is reversing the decision, making the decision. If Congress sought to limit it, they could have specified a decision by the PTAB or by a federal court, as the case may be, in the review. But Congress did not provide that. Congress sought to have a broad basis for allowing time when there's essentially a favorable outcome after the appeal is started. And that's essentially what the language there provides. I see my time is up, and we request reversal. Thank you. Thank you to both Council. The case is submitted. And that concludes the argument session for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.